# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

|  |  |  |  |
|---|---|---|---|
| | Plaintiff, | : | Case No. 1:15-cr-113 |
| | | | Also 1:19-cv-341 |
| | | | |
| | | | District Judge Susan J. Dlott |
| - vs - | | | Magistrate Judge Michael R. Merz |

LISTON WATSON,

|  |  |  |
|---|---|---|
| | Defendant. | : |

---

# REPORT AND RECOMMENDATIONS

---

This is an action on a Motion to Vacate a criminal conviction under 28 U.S.C. § 2255, brought by Defendant with the assistance of counsel, Bryan K. Perkins and Michael K. Allen (ECF No. 78). In the Motion as filed, Watson pleadsed the following claims for relief:

> **Ground One:** Petitioner did not enter his plea voluntarily and did not make his constitutional waivers knowingly and intelligently; as such his plea and sentence are void.
>
> **Supporting Facts:** Petitioner did not make a fully informed and intelligent waiver of his constitutional rights when he entered a guilty plea. He did not have the all necessary information before him at the time he entered his guilty plea. He had been misinformed on the maximum possible sentence he was facing. He was under duress when faced with the government threatening to withdraw his plea offer once the court made a decision on his pending motion to suppress. Petitioner was denied a continuance so he could have more time to consider the government's plea, but that was denied and he

1

was forced to make a snap decision regarding accepting the proposed plea agreement. Petitioner attempted to withdraw his guilty plea but was denied. (See attached Memorandum in Support).

**Ground Two:** The trial court violated the plea agreement between Petitioner and the Government without permitting Petitioner to withdraw his guilty plea.

**Supporting Facts:** Petitioner entered into a plea agreement with the government pursuant to Fed. R. Crim. Pro. 11 (c)(1)(C). The district court violated the terms of this agreement when it sentenced him to 1-day on Counts 1 and 5, when according to the terms of the plea agreement, Petitioner was not supposed to receive any sentence on these counts. Because the district court deviated from the terms of the plea agreement, it should have permitted Petitioner to withdraw his guilty plea. (See Memorandum in Support)

**Ground Three:** The trial court erred by not permitting Petitioner to withdraw his guilty plea prior to his sentencing when Petitioner set forth good cause for withdrawing his guilty plea.

**Supporting Facts:** Petitioner should have been permitted to withdraw his guilty plea. He was under duress when he entered his guilty plea, he did not have effective assistance of counsel, he did not have all the necessary information regarding his case, he was misinformed about the maximum possible penalties in the charges he pled guilty to, he wanted to pursue his motion to suppress, and the district court deviated from the terms of the plea agreement. (See Memorandum in Support)

**Ground Four**: A sentence in excess of the maximum sentence authorized by law is unlawful, violates due process, and is subject to collateral attack.

**Supporting Facts:** Because Petitioner entered into a plea agreement pursuant to Fed. R. Crim. Pro. 11(c)(1)(C), the terms of that agreement set forth the maximum possible sentence. In order to deviate from the terms of that agreement, the district court was required to give Petitioner the opportunity to withdraw his guilty plea prior to sentencing in violation of the agreed terms. In this case,

the district court denied Petitioner's request to withdraw his plea, and then sentenced him in excess of the agreed upon terms. (See Memorandum in Support)

**Ground Five:** The court had no jurisdiction or other legal authority to impose a sentence on Counts 1 and 5, rendering the sentences void.

**Ground Six:** Petitioner was denied effective assistance of counsel at the plea hearing, sentencing hearing, and during his direct appeal, in violation of the Sixth Amendment.

**Ground Seven:** Petitioner's guilty plea and sentence must be vacated due to structural error.

(ECF No. 78 and 78-1.  Grounds Five, Six and Seven are pleaded without a separate statement of supporting facts.

Before the United States filed an answer, Watson filed what he labeled as a Supplemental Memorandum in support of his Motion to Vacate but which is an effect adds a new eighth ground for relief, to wit, that Watson's conviction under 18 U.S.C. § 924(c) is unconstitutional on the basis of *United States v. Davis*, 139 S. Ct. 2319 (2019), which holds that 18 U.S.C. § 924(c)(3)(B)'s definition of a crime of violence is unconstitutionally vague.

**Litigation History**

Watson was arrested on a Complaint and later indicted on five counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), each with an associated count of using, carrying, and brandishing a firearm in violation of 18 U.S.C. § 924(c)(Indictment, ECF No. 14). The Federal Public Defender was appointed to represent Watson and the case was assigned upon indictment to United States District Judge Sandra S. Beckwith (ECF No. 6; docket notation of

3

November 4, 2015). On April 11, 2016, Watson filed a motion to suppress (ECF No. 23). That motion was set for hearing on April 25, 2016, but on that date the parties entered into a Plea Agreement (ECF No. 31). Two months later, after disclosure of the initial presentence investigation report, Watson filed a *pro se* motion to withdraw his guilty plea (ECF No. 34). That motion was denied (ECF No. 53) and on December 12, 2016, Judge Beckwith sentenced Watson (Minute Entry, ECF No. 58; Judgment, ECF No. 59). Watson appealed to the Sixth Circuit which affirmed the conviction and sentence. *United States v. Watson*, Case No. 16-4715, 716 Fed. Appx. 499 (6th Cir. Nov. 28, 2017), cert denied, 138 S. Ct. 2015 (May 14, 2018). Watson filed his Motion to Vacate under 28 U.S.C. § 2255 on May 6, 2019 (ECF No. 78). On July 5, 2019, Watson supplemented his Motion as noted above by adding a claim under *Davis*. The United States filed its answer on August 1, 2019 (ECF No. 86). The case came on for evidentiary hearing on March 6, 2020,[1] and the testimony has been transcribed (Transcript, ECF No. 110). The parties have filed post-hearing briefs (ECF Nos. 111, 112), rendering the Motion to Vacate ripe for decision.

## Analysis

The Motion to Vacate includes eight grounds for relief as quoted above. However, the post-hearing briefing of both parties is not structured around those grounds for relief. Watson has never amended his Motion (except for adding the claim under *Davis*). However, his post-hearing brief (labeled "Supplemental Memorandum," ECF No. 111) is entirely structured around his claim that his plea agreement was breached and what remedy the Court should provide. (See Table of

---

[1] The hearing was continued several times because of the inability of the Marshall's Service to transport Watson in time for prior schedulings.

Contents, ECF No. 111, PageID 576-77).  As he candidly admitted at the end of the evidentiary hearing, this is because he believes if he is re-sentenced, he will be entitled to benefit from the amendment to 18 U.S.C. § 924(c)(1)(C) made by the First Step Act[2].  As the Government points out in its Response, the First Step Act is not retroactive (ECF No. 112, PageID 624).

The Magistrate Judge believes the Court must decided the grounds for relief as they are pleaded.  Therefore this Report is structured around those claims.


**Ground One:  Involuntary Guilty Plea**


In his First Ground for Relief, Watson contended that his guilty plea was involuntary because he was misadvised about the possible maximum sentences and he was not given a requested continuance to consider whether to accept the offered bargain.

Watson has effectively abandoned his First Ground for Relief because he has explicitly said he does not now wish to withdraw his guilty plea (ECF No. 111, PageID 601, referring to Defendant's statement to that effect during the evidentiary hearing).  Therefore no further analysis is required of Ground One which is deemed withdrawn.

---

[2] When Watson was convicted, a second violation of §924(c), even if it happened in the same case, carried a mandatory minimum sentence of twenty-five years, the sentence Watson received on Count 6.  The First Step Act reserved that second violation mandatory minimum for violations of § 924(c) that occur "after a prior conviction under this subsection has become final."

**Ground Two:  Breach of the Plea Agreement**

Watson argues that Judge Beckwith, acting on the Government's recommendation, violated the plea agreement by imposing a sentence of 360 months on the firearms charges and one day for the bank robbery charges.

The written Plea Agreement provides that Watson will plead guilty to Counts One and Five of the Indictment charging him with Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and Counts Two and Six charging him with Possession of a Firearm in Furtherance of a Crime, in violation of 18 U.S.C. § 924(c)(ECF No. 31, PageID 98).  By the Plea Agreement, Count Two was to be amended to eliminate the brandishing enhancement and the mandatory minimum penalty thereby set at five years consecutive to any other sentence. *Id.* at ¶ 3.  Count Six was noted to carry a mandatory minimum penalty of twenty-five years, also consecutive to any other sentence.  *Id.*

The parties further agreed pursuant under Fed.R.Crim.P. 11(c)(1)(C), 18 U.S.S.C. § 3553, and the Sentencing Guidelines that an appropriate sentence was 360 months, the combined mandatory minimum for Counts Two and Six. *Id.* at ¶ 4, PageID 99.  If the Court accepted "this plea agreement a term of imprisonment of (360) months will be imposed." *Id.* A plea colloquy was held the same day the Plea Agreement was signed (Transcript, ECF No. 49).  There has been no suggestion by Defendant that the colloquy did not comply with Fed.R.Crim.P. 11, that it did not accurately reflect the Plea Agreement,[3] or that it does not contain admission of sufficient facts to ground the four convictions.

Watson was sentenced December 12, 2016 (Minute Entry, ECF No. 58).  As reflected in the Judgment entered that day, he was sentenced to "Three hundred and sixty months (360) and

---

[3] During the colloquy, Watson was advised that the maximum penalty for the bank robbery counts was twenty-five years instead of the twenty year maximum he had previously been told.

one day. Broken down as follows: Counts 1 and 5, one day each to be served concurrently, with credit for time served; Count 2, sixty (60) months consecutive to Counts 1 and 5; Count 6, 300 months to be served consecutively to all other Counts." (ECF No. 59, PageID 234). The written Judgment accurately reflects the sentence orally pronounced in open court where both Judge Beckwith and the Assistant United States Attorney agreed it was in accordance with the recommendations of the probation Department (Sentencing Transcript, ECF No. 71, PageID 305). Neither Mr. Watson nor his attorney voiced any objection at the sentencing hearing to a sentence of one day with credit for time served on each of the bank robbery counts. Nor was there any post-trial motion to amend the judgment.

New counsel was appointed to represent Watson on appeal. The Sixth Circuit affirmed. *United States v. Watson*, Case No. 16-4715, 716 Fed. Appx. 499 (6th Cir. Nov. 28, 2017), cert denied, 138 S. Ct. 2015 (May 14, 2018). The court noted defense counsel neither objected to the extra day nor asked to withdraw Watson's plea on the basis of the sentence imposed. *Id.* at PageID 317. Watson's principal argument on appeal was that the Court had abused its discretion in not allowing him to withdraw his guilty plea when he moved to do so prior to sentencing. As to his second claim about withdrawal after sentencing, court held

> Watson also argues the district court erred by not letting him withdraw his plea after it breached his plea agreement [by adding one day to the 360 months agreed on]. He never objected on this ground, so we review for plain error. *Puckett v. United States*, 556 U.S. 129, 135–36, 143 (2009). Therefore, we look for "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alteration in original) (internal quotation marks omitted). If we find all three, we may in our discretion correct a forfeited error, "but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration in original) (internal quotation marks omitted).

7

> Although the government concedes the first three plain-error elements, Watson has not shown plain error because he has again presented a perfunctory argument. He mentions "plain error" in a heading, but never outlines its four elements and never argues they are met. Instead, Watson simply describes what happened at sentencing: "the parties agreed upon a flat 360-month sentence"; "[t]he district court breached this agreement in sentencing this defendant to 360-months incarceration '*and one day*'"; and "defendant was not permitted to withdraw the guilty plea." "A party may not raise an issue on appeal by mention[ing it] . . . in the most skeletal way, leaving the court to . . . put flesh on its bones." U*nited States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016) (alterations in original) (internal quotation marks omitted). We consider Watson's argument abandoned. *See Vander Boegh*, 772 F.3d at 1063.

*Id.* at PageID 320.

Ground Two for Relief is procedurally defaulted by Watson's failure to make a contemporaneous objection to the sentence in this Court before appeal.

The procedural default doctrine in habeas corpus for cases coming from the state courts is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal

habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

The Supreme Court has held that the procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions. *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

The contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, has been held to be an adequate and independent state ground of decision sufficient to ground a procedural default defense. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). Precisely the same interests underlie the federal contemporaneous objection requirement. See Fed.R.Crim.P. 51(b).

In this case the Sixth Circuit enforced the contemporaneous objection rule in the same way the Ohio courts do: by considering a claimed error not objected to in the District Court only for plain error. The Sixth Circuit has held in habeas cases under § 2254 that review for plain error is an enforcement of the contemporaneous objection rule, not a waiver of it. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001). Here the Sixth Circuit enforced the contemporaneous objection rule by holding that only a plain error version of this claim had been preserved for appeal, but then abandoned.

A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent

9

manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th, §41.7(e)(2011), *citing Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*, citing Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993). If a defendant has a claim that could have been presented on direct appeal that was raised but then abandoned, that claim is procedurally defaulted.

Because Watson failed to make a contemporaneous objection to his sentence and then abandoned that issue on appeal, his Second Ground for Relief is procedurally defaulted.


**Ground Three: Failure to Allow Withdrawal of Plea Prior to Sentencing**


In his Third Ground for Relief, Watson asserts the Court committed error by not allowing him to withdraw his guilty plea. This issue has already been decided in the Government's favor by the Sixth Circuit. *United States v. Watson*, ECF No. 74, PageID 317-20. Just as a motion under § 2255 is not permitted to raise a claim that could have been decided on direct appeal, so much more is it not a vehicle to obtain a reversal of a decision made by the Court of Appeals in the same case.

**Grounds Four and Five:  Sentence in Excess of Lawful Maximum and Imposed Without Authority**

Defendant's Fourth and Fifth Grounds for Relief are merely a restatement of his Second Ground.  His theory is that the maximum sentence allowed by law, because of the Plea Agreement, was 360 months and the sentence actually imposed is in excess of the maximum by one day.  These Grounds for Relief should be dismissed on the same basis as Ground Two:  they are procedurally defaulted for want of a contemporaneous objection in the District Court and by abandonment on appeal.

**Ground Six:  Ineffective Assistance of Counsel**

Watson combines in his Sixth Ground for Relief three separate claims of ineffective assistance of counsel, to wit, during the plea proceedings, at sentencing, and on appeal.  Watson was represented from the initial appointment of counsel on October 22, 2015, by Assistant Federal Defender Zanaida Lockard (ECF No. 6), until July 11, 2016, when she was replaced by CJA Attorney William Gallagher on July 11, 2016 (ECF No. 41).  Gallagher remained as counsel through sentencing and filing the Notice of Appeal until he was permitted by the Sixth Circuit to withdraw on March 15, 2017 (ECF No. 67).  The Court of Appeals then appointed Carole Margaret Stanyar of Ann Arbor, Michigan, for the appeal.[4]  Thus it is Ms. Lockard's representation that is challenged in the first sub-claim, Mr. Gallagher's in the second, and Ms. Stanyar's in the third.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

---

[4] The order of appointment is not docketed in this Court; counsels' name is extracted from the cover letter on the Sixth Circuit decision on appeal (ECF No. 74, PageID 315).

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.466 U.S. at 694. *See also Darden v. Wainwright,* 477 U.S. 168, 184

12

(1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing*

*Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466

U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey*

*v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-

12 (2011).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland,* 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

Counsel's performance is measured by "prevailing professional norms" at the time of the

alleged errors. *Strickland, supra,* at 690; *Maryland v. Kulbicki*, 577 U.S. ___, 136 S. Ct. 2, *; 193

L. Ed. 2d 1 (2015); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997).

## A. Ineffective Assistance of Counsel at the Plea Hearing Stage.

Watson alleges he received ineffective assistance of trial counsel from Ms. Lockard at the

plea hearing stage because his "trial counsel failed to adequately prepare for the suppression

hearing by subpoenaing necessary witnesses and timely providing him with the discovery [a ballistics report] he had requested. Further, his counsel failed to properly advise him of the correct maximum statutory sentences on the Bank Robbery charges." (Post-Hearing Memorandum, ECF No. 111, PageID 609).

Watson fails to satisfy the *Strickland* standard as to this sub-claim. He has failed to show what witnesses should have been subpoenaed or what they would have testified to or how that would have led to winning the motion to suppress. The discovery he did not receive was a ballistics report, but he admitted at the March, 2020, hearing that he now understands that report was irrelevant to the motion to suppress[5]. Although his attorney may not have advised him of the correct maximum sentence for bank robbery, Judge Beckwith corrected that during the plea colloquy. Finally, he has shown no prejudice from either of the alleged deficiencies in performance because he made it very clear at the hearing that he does not want to withdraw his plea.

## B. Ineffective Assistance of Counsel at Sentencing

Watson claims his Mr. Gallagher provided ineffective assistance of trial counsel when he did not object to the 360 months plus one day with credit for time served sentence. This is a prime example of viewing attorney conduct with the distorting vision of hindsight the Supreme Court criticized in *Strickland*.

---

[5] His apparent theory at the time was that the ballistics report would have shown that one or more of the firearms used in the bank robberies was inoperable. The operability of the firearms would have been an issue for trial, but would have had no bearing on whether they were unlawfully seized.

After the Plea Agreement was signed and the plea colloquy occurred, Judge Beckwith referred the case for a presentence investigation by the Probation Department.  When the initial draft of that report was completed, the Probation Officer provided it to Mr. Gallagher.  He and Watson reviewed the Report and made some objections, all of which were resolved in Watson's favor before the final Report was furnished to the Court.  At the time of sentencing, neither Gallagher nor Watson had any remaining objections to the Report which recommended precisely the sentence Judge Beckwith imposed.  (Sentencing Tr., ECF No. 71, PageID 283-84.)  Because the Sentencing Guideline range in the case was 78-97 months for the bank robbery counts, probation was not an authorized sentence. *Id.* at PageID 287.  Thus the Court was obliged to impose some incarcerated sentence on the bank robbery counts which is presumably why all parties agreed on the concurrent one-day with credit for time served sentences on the bank robberies.

In his allocution, Watson stated his belief that the agreed sentence was not fair, given his circumstances; he compared himself with Nelson Mandela who was in prison for thirty years. *Id.* at PageID 295.  He complained about failure to make consular notification at arraignment.[6]  He complained about the lack of his "type" of people in the process:

> But I must say, from the start of my arrest till this very day, from my arresting officer to my lawyer to my presentence investigation reporting officer, my prosecutor, there's nowhere in here have I seen anyone of my type or people of my peers having any decision in the taking away of my life or liberty or freedom.

*Id.* at PageID 291.  Judge Beckwith apparently understood this as a complaint about the absence of black people in the process, because she pointed to Kenneth Parker, the African-American man who was head of the criminal division of the U.S. Attorney's Office at the time. *Id.* at PageID 298. Watson made many other complaints in his allocution, but never once complained that he was

---

[6] Watson is Jamaican by birth with permanent residence status.

15

receiving a sentence more severe than the one he had agreed to. Instead, he appears to have believed thirty years in prison was too much time for five armed bank robberies.

In sum, Mr. Gallagher did not perform deficiently at sentencing because the sentence actually imposed was exactly the sentence the Probation Office recommended and to which Watson did not object, and conformed to the requirements of law. Watson's second sub-claim is without merit.

### C. Ineffective Assistance of Counsel on Appeal

Finally, Watson claims he received ineffective assistance of appellate counsel when his appellate attorney did not brief his claim that the trial court breached the plea agreement (ECF No. 111, PageID 610). He claims he certainly did not want to abandon the claim "[c]onsidering the amount of effort taken by Watson to correct his sentence both before and after his direct appeal." *Id.* But as shown above Watson expended **no** effort to "correct" his sentence before the appeal; he did not object at sentencing and filed nothing to correct it in the trial court until he filed his Motion to Vacate a year after the Supreme Court denied certiorari in his case.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008. Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967); *United States v. Cronic,* 466 U.S. 648 (1984). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of

16

ineffective assistance of appellate counsel, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.*

The appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a

17

reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6ᵗʰ Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6ᵗʰ Cir. 2001), *cert. denied,* 535 U.S. 940 (2002).  "Counsel's performance is strongly presumed to be effective."  *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6ᵗʰ Cir. 2000)(*citing Strickland*).  "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6ᵗʰ Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7ᵗʰ Cir. 1986).

The Magistrate Judge is left with no evidence about the decisions on appeal regarding this claim.  Appellate counsel was not called or even named as a potential witness at the March 2020 hearing.  Watson himself was the only witness presented on his behalf.  He disclosed nothing about any conversations with Ms. Stanyar about this claim except that he knew it was being presented and that the Government was arguing it did not meet the plain error standard.

Given that there was no contemporaneous objection to the sentence, Watson has not shown that this claim of breach of the plea agreement by adding one day served could have satisfied the plain error standard which is "whether or not that deviation seriously affected the fairness, integrity, or public reputation of judicial proceeding;"  (Motion Hearing Transcript, ECF No. 110, PageID 421, quoting *United States v. Olano,* 507 U.S. 725, 736 (1993)).  The first claim raised on appeal – that Judge Beckwith should have allowed the pre-sentence withdrawal of the guilty plea – was clearly a stronger argument as it elicited a full discussion by the court of appeals.  Watson has failed to show he received ineffective assistance of appellate counsel when this claim was effectively abandoned on appeal.

18

In sum, Watson's claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel are without merit.

**Ground Seven:  Structural Error**

In his Seventh Ground for Relief, Watson argues in conclusory fashion that his "guilty plea and sentence must be vacated due to structural error."  As noted above, Watson abandoned the first part of this claim at the motion hearing:  he no longer wants to have his guilty plea vacated. He has offered no authority for the proposition that his sentence somehow represents a structural error.

Errors of a structural nature cannot be harmless because they are said to "infect" the entire process.  *Arizona v. Fulminante*, 499 U.S. 279 (1991).  Examples include judicial bias (*Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008)*, citing Washington v. Recuenco,* 548 U.S. 212 (2006), and *Sullivan v. Louisiana,* 508 U.S. 275, 283 (1993))*, Tumey v. Ohio*, 273 U.S. 510 (1927)), complete denial of counsel (*Johnson v. United States*, 520 U.S. 461 (1997)), racial discrimination in the selection of a grand jury (*Vasquez v. Hillery*, 474 U.S. 254 (1986)), denial of self-representation at trial (*McKaskle v. Wiggins,* 465 U.S. 168 (1984)), denial of public trial (*Waller v. Georgia*, 467 U.S. 39 (1984)), a defective reasonable doubt instruction (*Sullivan v. Louisiana*, 508 U.S. 275 (1993)),  *Batson* violations, *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008), or exclusion for cause of a juror who has scruples about the death penalty, *Wheeler v. Simpson*, 779 F.3d 366 (6th Cir. 2015), citing *Lockhart v. McCree*, 476 U.S. 162, 176 (1986), and *Uttecht v. Brown*, 551 U.S. 1 (2007).  In *McCoy v. Louisiana*, 584 U.S. ___, 138 S. Ct. 1500 (2018), the court added admitting guilt when client wants to oppose it, even when evidence is overwhelming.  The Supreme Court

has "found structural error only in a very limited class of cases." *Johnson v. United States,* 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997); *Hereford v. Warren*, 536 F.3d 523 (6th Cir. 2008).  "*Most* constitutional mistakes call for reversal only if the government cannot demonstrate harmlessness. Only the rare type of error – in general, one that '[infect] [s] the entire trial process' and 'necessarily render[s] [it] fundamentally unfair' requires automatic reversal." *Glebe v. Frost*, 574 U.S. 21 (2014), citing *Neder v. United States*, 527 U.S. 1, 8 (1999).  In *Weaver v. Massachusetts*, 582 U.S. ___, 137 S. Ct. 1899  (2017), the Court held denial of a public trial is a structural error, but if it is not preserved by objection and direct appeal, its later presentation on an ineffective assistance of trial counsel claim requires proof of prejudice, i.e. a reasonable probability of a different outcome.

Watson's claim of structural error, his Seventh Ground for Relief, is without merit.


**Ground Eight:  Unconstitutionality of 18 U.S.C. § 924(c)(3)(B)**


In the claim added by amendment, Watson asserts his convictions under 18 U.S.C. § 924(c) are unconstitutional as a result of *United States v. Davis*, 139 S. Ct. 2319 (2019), which holds 18 U.S.C. § 924(c)(3)(B)'s definition of a crime of violence is unconstitutionally vague.

Watson was indicted on five counts of violating § 924(c) and pleaded guilty to two of them, Counts Two and Six.  Count Two alleges

> On or about December 11, 2012, in the Southern District of Ohio, the defendant, LISTON WATSON, did knowingly use, carry and brandish a firearm, that is, a Smith & Wesson 9mm, semi-automatic handgun, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States - that is, bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), as more fully set forth in Count One of this Indictment and incorporated here.  All in violation of 18 U.S.C. § 924 (c).

(Indictment, ECF No. 14, PageID 27-28.)  Count Six is parallel except it alleges a different date.

18 U.S.C. § 924(c)(1)(A) provides:

> Except to the extent that a greater minimum sentence is otherwise
> provided by this subsection or by any other provision of law, any
> person who, during and in relation to any crime of violence or drug
> trafficking crime (including a crime of violence or drug trafficking
> crime that provides for an enhanced punishment if committed by the
> use of a deadly or dangerous weapon or device) for which the person
> may be prosecuted in a court of the United States, uses or carries a
> firearm, or who, in furtherance of any such crime, possesses a
> firearm, shall, in addition to the punishment provided for such crime
> of violence or drug trafficking crime—
> (i)
> be sentenced to a term of imprisonment of not less than 5 years;

The Indictment plainly charges Watson with having used[7] a firearm in the commission of
bank robbery in violation of 18 U.S.C. § 2113(a) and (d).  Is bank robbery as thus prohibited a
"crime of violence"?  18 U.S.C. § 924(c)(3) provides alternative definitions of "crime of violence":

> (3) For purposes of this subsection the term "crime of violence"
> means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of
>    physical force against the person or property of another, **or**
>
> (B) that by its nature, involves a substantial risk that physical force
>    against the person or property of another may be used in the
>    course of committing the offense.

§ 924(c)(3)(A) is referred to as the "elements" clause and (c)(3)(B) as the "residual" clause.  It is
only (c)(3)(B) that was declared unconstitutionally vague in *Davis*.

---

[7] A brandishing enhancement, which would have raised the mandatory minimum sentence to seven years, was
dismissed as part of the Plea Agreement.

21

Count One of the Indictment charges:

> On or about December 11, 2012, in the Southern District of Ohio, the defendant LISTON WATSON, by force, violence and intimidation did take from the person and presence of another money in the amount of approximately $3,500.00 belonging to and in the care, custody, control management, and possession of the Fifth Third Bank, located at 3656 Springdale Road, Cincinnati, Ohio, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing such offense, the defendant LISTON WATSON. did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm. All in violation of 18 U.S.C. § 2113(a) and (d).

Count Five is parallel except for alleging a different date. Thus the bank robbery counts to which Watson pleaded guilty charge him with using force, violence, and intimidation (to wit by using a firearm) to rob a qualifying bank. Thus these two counts charge Watson with committing an offense which is a crime of violence under the "elements" clause, not the "residual" clause.

The Government had no need to rely on § 924(c)(3)(B) to convict Watson of a violation of § 924(c) because bank robbery plainly comes within § 924(c)(3)(A). In deciding whether a crime is a violent crime under § 924(c), a federal court must determine whether it "has as an element the use or attempted used of '*violent* force – that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010)." *United States v. Rafidi*, 829 F.3d 437 (6th Cir. 2016). That element may be satisfied by showing actual physical contact. *United States v. Rafidi*, 829 F.3d 437 (6th Cir. July 11, 2016), citing *United States v. Street,* 66 F.3d 969, 977 (8th Cir. 1995). In the absence of physical contact, the forcible element can be established by proving a threat or display of physical aggression "sufficient to inspire fear of pain, bodily harm, or death. *Rafidi*. This satisfies the requirement of threatened use of physical force from the

earlier 2010 *Johnson* decision.  *Rafidi*, quoting *United States v. Chambers*, 195 F.3d 274, 277 (6th Cir. 1999).

Watson's argument that "intimidation" by brandishing a firearm does not constitute a crime of violence by use of force is without merit under the case law.  He makes a point of noting that he insisted that the Plea Agreement be changed from a plea to use of "force, violence, **and** intimidation" to "force, violence, **or** intimidation." (Post Hearing Memorandum, ECF No. 111, PageID 607-08).  The change makes no difference:  intimidation by threat of use of a firearm is a threat of the use of deadly physical force.  The threat of course can be implicit:  When an armed robber demands money from a victim, he does not have to say "And if you don't give me the money, I will pull the trigger on this thing I am holding in my hand which is designed to inflict severe physical harm or death" in order to be convicted.

Watson's further argument is that the Government cannot rely on § 924(c)(3)(A) because it did not plead that statute, as if somehow § 924(c)(3)(B) were a default provision.  But there is no such requirement for pleading under either (c)(3)(A) or (B).  Watson can point to no place in the record where the Government argued the two bank robberies in this case were crimes of violence because they came within (c)(3)(B).

In both the Statement of Facts attached to the Plea Agreement and in the plea colloquy in open court, Watson admitted that he assaulted or put in jeopardy the life of another person by using a firearm in the course of a bank robbery (See, e.g., Plea Transcript, ECF No. 49, PageID 173; Plea Agreement Statement of Facts, ECF No. 31, PageID 104.)

Watson's Eighth Ground for Relief under *Davis* is without merit.

**Conclusion**

In accordance with the foregoing analysis, the Magistrate Judge respectfully recommends that the Motion to Vacate as supplemented be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 7, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.