IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:15-cr-113 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Motion for |
| Liston Watson, | : | Compassionate Release |
| | : | |
| Defendant. | : | |

Pending before the Court is Defendant Liston Watson's *pro se* Motion for Compassionate Release and the Supplemental Motion for Compassionate Release filed by his appointed attorney. (Docs. 152, 156.) The Government filed a Memorandum in Opposition to which Watson filed a Reply. (Docs. 157, 158.) For the reasons that follow, the Court will **DENY** the Motion and Supplemental Motion.

I. BACKGROUND

On November 14, 2015, a grand jury issued an Indictment charging Defendant Liston Watson with five counts of bank robbery and five counts of possession of a firearm in furtherance of a crime of violence. (Doc. 14). He pleaded guilty before now-retired Judge Sandra A. Beckwith to two counts of bank robbery and two count of possession of a firearm in furtherance of a crime of violence on December 12, 2016. (Doc. 59.) Judge Beckwith sentenced him to 360 months imprisonment. (Doc. 58.) This sentence was consistent with the Plea Agreement signed by the parties in April 2016, though Watson later unsuccessfully tried to withdraw his guilty plea. (Doc. 31.) Watson currently is incarcerated at FCI Berlin with an estimated release date of September 22, 2041. Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last viewed 3/14/2022).

Watson appealed his sentence to the Sixth Circuit Court of Appeals and filed multiple post-sentencing motions, including a 28 U.S.C. § 2255 motion to vacate his sentence and a *pro se* Rule 59(e) motion to amend the judgment. (Docs. 61, 78, 133.) The Sixth Circuit affirmed the judgment on direct appeal. (Doc. 74.) The district court denied the § 2255 motion and Rule 59(e) motion. (Docs. 125, 136.) Watson's appeal of the decision denying his § 2255 motion currently is pending before the Sixth Circuit in Case No. 20-3922. (Doc. 150.) The appeal includes issues regarding Watson's Plea Agreement with the Government.

Watson now has moved for compassionate release. The matter is fully briefed and ripe for adjudication.

## II.    STANDARD OF LAW

The Court lacks authority to resentence a convicted defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Id.* at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by

> the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Where, as here, the defendant has exhausted administrative remedies,[1] the district court must (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108 (6th Cir. 2020).[2] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)). Courts generally have discretion to define what constitutes "extraordinary and compelling" reasons. *Id.* at 562. Nonetheless, the Sixth Circuit has defined two restrictions on that discretion in *Hunter*:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id.* The first *Hunter* restriction has been the subject of divergent opinions in the Sixth Circuit as

---

[1] Watson filed a request for compassionate release with the prison warden on May 28, 2021, and the warden denied his request on June 10, 2021. (Doc. 152 at PageID 987–989.)

[2] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–520 (6th Cir. 2021).

will be discussed in the Analysis section below.

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553. A district court also can consider the non-retroactive changes in law relevant to sentencing as part of its weighing of the § 3553(a) sentencing factors. *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 760 (2022).

## III.     ANALYSIS

Watson moves for compassionate release on two grounds. First, he asserts that he would be entitled to a lower sentence on the charges to which he pleaded guilty if he were sentenced today. Whether a district court may consider a non-retroactive change in law as a basis to find that extraordinary and compelling reasons support compassionate release under 18 U.S.C. § 3582(c)(1)(A) is the source of an "intractable" "intra-circuit split." *United States v. McCall*, 20 F.4th 1108, 1116 (6th Cir. 2021) (Kethledge, J., dissenting), *petition for rehearing en banc filed* (Feb. 1, 2022). Initially, two panels of the Sixth Circuit Court of Appeals held that non-retroactive changes in sentencing law rendered by the First Step Act did not qualify as extraordinary and compelling reasons under § 3582(c)(1)(A). *See United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021); *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021), *cert denied*, 142 S Ct. 780 (Jan. 10, 2022). Then, however, in *United States v. Owens*, 996 F.3d 755, 763–764 (6th Cir. 2021), a divided panel of the Sixth Circuit Court of Appeals held that although a district court cannot rely on a non-retroactive First Step Act change in law alone, it may do so

combined with other factors to determine whether an extraordinary and compelling reason for compassionate release exists.

After that decision was issued, another divided panel of the Sixth Circuit held in *Jarvis*, that district courts cannot consider non-retroactive sentencing amendments when determining a defendant's eligibility for compassionate release, whether alone or in combination with other factors. 999 F.3d at 445–446. *Jarvis* disregarded *Owens* on the basis that the decision did not follow the controlling authority of *Tomes*. *Id*. Next, in *Hunter*, the Sixth Circuit held that the Supreme Court's non-retroactive decision in *United States v. Booker*, 543 U.S. 220 (2005)—rendering the Sentencing Guidelines advisory—did not qualify as an extraordinary and compelling reason for release. 12 F.4th at 564. *Hunter*, like *Jarvis*, distinguished *Owens* for failing to follow the binding authority of *Tomes*. *Id*. at 564 n.4.

Despite the definitive language used in *Hunter*, the disagreements among panels continued in the Sixth Circuit. The majority in *McCall* declared *Owens* controlling authority, and disregarded *Jarvis* and *Hunter*. 20 F.4th at 1114. It determined that the non-retroactive decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019),[3] could be considered to determine whether a defendant had established extraordinary and compelling reasons for compassionate release. *Id*. at 1113–114, 1116. Finally, and most recently, a panel of the Sixth Circuit conversely held in *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. Jan. 26, 2022), that the non-retroactive sentencing law decision in *Havis* was not an extraordinary and compelling reason for an inmate's release, whether considered alone or in combination with other factors. The *McKinnie* court stated that *McCall* was wrongly decided and that neither *Owens* nor *McCall* should be followed:

---

[3] The Sixth Circuit held in *Havis* that the Sentencing Guideline definition of "controlled substance offense" did not include attempt crimes. 927 F.3d at 387.

> That leads us to our recent decision in *United States v. McCall*. Writing against this settled precedential backdrop, *McCall* nonetheless suggested that *Hunter* need not be followed because it was decided after *Owens*. *See United States v. McCall*, 20 F.4th 1108, 1112–14 (6th Cir. 2021). That suggestion is difficult to accept when *Owens* did not address the question posed in *Hunter*: are non-retroactive judicial decisions "extraordinary and compelling reasons" to reduce an inmate's sentence under § 3582(c)(1)(A)? In other words, whether one accepts *Tomes* or *Owens,* there is no fair basis for not honoring *Hunter*, which ultimately resolved a question different from that raised in the prior cases. *McCall*, it is fair to say, disagreed with the holding in *Hunter*. But as *McCall* was decided after *Hunter*, the law of the Circuit doctrine required *McCall* to follow the prior precedent. *See Wright*, 939 F.3d at 700. *See generally United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) ("One panel of this court may not overrule the decision of another panel."). Adherence to that longstanding doctrine allows our Court to speak with one voice, whatever that voice may say in a particular context. Any other approach would leave district courts scrambling to assess a wave of conflicting appellate court decisions. And it would undermine any ability for parties to rely on a consistent application of the law, concerns that are at their apex in this criminal law setting, where substantial liberty interests are at stake. *See United States v. Cox*, 871 F.3d 479, 494 (6th Cir. 2017) (Sutton, J., concurring); *United States v. Diaz-Bastardo*, 929 F.2d 798, 799 (1st Cir. 1991) (Selya, J.).

*McKinnie*, 24 F.4th at 589.

District courts have been caught in the crossfire of this intra-circuit split, but it is possible that the Sixth Circuit will grant an *en banc* rehearing in *McCall* to resolve the dispute. In the interim, the Court is persuaded that *Owens* and *Hunter* should be controlling based on the analysis set forth in the *McKinnie* case. The Court holds that a non-retroactive change in sentencing law, alone or in conjunction with other factors, cannot serve as the extraordinary and compelling reason for a reduction in sentence pursuant to § 3582(c).

Watson also argues that he is entitled to compassionate release because of the health risk he faces in prison due to COVID-19 and as a patient with the sickle cell trait.[4] The Centers for Disease Control lists sickle cell disease as a disorder that can make a person "more likely to get very sick from COVID-19." CDC, *COVID-19*, *People with Certain Medical Conditions*,

---

[4] Watson has provided prison records indicating that he has the sickle cell trait. (Doc. 152 at PageID 995.)

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed 2/28/2022).  Watson, in fact, tested positive for COVID-19 on April 23, 2021 before he moved for compassionate release.  (Doc. 152 at PageID 994.)  He asserts that he suffered breathing difficulties and chest pains after contracting COVID-19.  (*Id.* at PageID 979, 988.)  Prison medical records indicate that Watson was prescribed to take 800 MG of Ibuprofen three times daily and to use an Albuterol inhaler up to four times per day as needed.  (Doc. 156-1 at PageID 1017.)  Watson asserts that he was quarantined for seventeen days after he tested positive.  (*Id.* at PageID 1019.)  He asserts that COVID-19 caused irreparable scarring to his lungs for which he was prescribed the steroid inhaler, Mometasone Furoate.  (*Id.* at PageID 1017–1018, 1020.)  Finally, he asserts that the prison doctors or nurses have told him that the COVID-19 vaccine is not recommended for him due to his sickle cell condition.  (*Id.* at PageID 1019; Doc. 158-1 at PageID 1036.)

While the Court is sympathetic to Watson, he has not established that the Bureau of Prisons has been unable to provide him with adequate medical care.  Courts have found that prisoners who have contracted COVID-19 and recovered ordinarily do not present an extraordinary and compelling basis for compassionate release.  *See*, *e.g.*, *United States v. Mackety*, 854 F. App'x 36, 38–39 (6th Cir. 2021) (denying compassionate release to inmate with serious medical conditions who recovered from COVID-19); *United States v. Littles*, No. 15-20317, 2020 WL 4346962, at *1, 3–4 (E.D. Mich. July 29, 2020) (denying compassionate release to an immunocompromised inmate who had COVID-19 and recovered); *United States v. Clark*, No. 3:09-CR-90-CRS, 2020 WL 3977652, at *4 (W.D. Ky. July 14, 2020) (denying compassionate release to prisoner with urinary/prostate issue who recovered from COVID-19).  The *Mackety* case is instructive.  Mackety had several medical conditions, including diabetes and

obesity, which put him at risk for more severe illness from COVID-19, but nothing in the record demonstrated that the prison had been unable to manage his medical needs. 854 F. App'x at 38. Mackety contracted COVID-19 and recovered without complications. *Id.* The Sixth Circuit concluded that the district court had not erred when it found that Mackety had not established an extraordinary and compelling basis for release. *Id.* at 38–39.

Here, likewise, Watson contracted COVID-19 in April 2021, and although he suffered complications, there is no indication that the Bureau of Prisons has provided him inadequate medical care. The Court cannot know Watson's risk for re-infection, but it is a positive sign that 581 inmates at FCI Berlin have been vaccinated. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited 3/14/2022).[5] FCI Berlin reports that there are no inmates currently infected with COVID-19 at the prison. *Id.* (last viewed 3/14/2022). Finally, Watson has not provided medical records to support his assertion that the prison doctor or nurses advised him not to get a COVID-19 vaccine.[6] Given these circumstances, Watson's increased risk of severe illness from COVID-19 is not an extraordinary and compelling basis to grant him compassionate release.[7] The Court need not weigh the § 3553

---

[5] There are 694 inmates total at FCI Berlin. Federal Bureau of Prisons, *FCI Berlin*, https://www.bop.gov/locations/institutions/ber/ (last visited 3/14/2022). The Sixth Circuit has stated that COVID-19 does not present an extraordinary and compelling basis for relief for an inmate for whom the vaccine is available. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

[6] The Sickle Cell Disease Association of America, Inc. ("SCDAA") recommends the vaccine for people with sickle cell disease. SCDAA, *Medical and Research Advisory Committee Special Statement*, https://www.sicklecelldisease.org/2020/12/15/marac-advisory-statement-covid-19-vaccines/# (last viewed 3/14/2022); SCDAA, *Medical and Research Advisory Committee Update about COVID-19 Vaccines*, https://www.sicklecelldisease.org/2021/10/01/marac-advisory-statement-update-about-covid-19-vaccines/ (last viewed 3/1/4/2022). The American Society of Hematology also recommends vaccination for people with sickle cell disease. American Society of Hematology, *COVID-19 Resources*, https://www.hematology.org/covid-19/covid-19-and-sickle-cell-disease (last viewed 3/14/2022).

[7] To be clear, the Court's conclusion would be the same even if the Court considered the non-retroactive change in sentencing law in conjunction with Watson's health risks from COVID-19. The facts here are similar to those in *McKinnie*. In *McKinnie*, the Sixth Circuit rejected the argument that a non-retroactive change in law, the defendant's obesity and hypertension, risk of complications from COVID-19 infection, conditions of incarceration, and good behavior while in prison rose to the level of an extraordinary and compelling reason for release. *Id*. at *3–

factors because Watson cannot meet the first prong of the § 3582(c)(1)(A) test. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### IV. CONCLUSION

In accord with the analysis above, Watson's Motion to Grant Compassionate Release and Supplemental Motion to Grant Compassionate Release are **DENIED**. (Docs. 152, 156.)

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

---

4. There is no indication in the case record or in the non-public Presentence Report that Judge Beckwith knew that Watson had sickle cell disease when she sentenced him, but as stated in the text above, but there is no reason to find that factor to be dispositive in this instance.